**W. C. PEACOCK & CO., Limited, et al. v. PRATT, Assessor and Collector.**

(Circuit Court of Appeals, Ninth Circuit. February 9, 1903.)

No. 897.

**1. TAXATION—CONSTITUTIONAL PROVISIONS—POWERS OF TERRITORY.**

Article 8, § 1, of the Constitution of the United States, requiring that "all duties, imposts and excises shall be uniform throughout the United States," establishes the rule only for taxation by the federal government, and has no application to the powers of taxation of a state or territorial legislature.

**2. SAME—TERRITORY OF HAWAII—POWERS CONFERRED BY ORGANIC ACT.**

The provision of the organic act of the territory of Hawaii that "the legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable" includes full and comprehensive power to legislate in the matter of taxation.

**8. SAME—INCOME TAX LAW—DISCRIMINATION BETWEEN CORPORATIONS.**

A provision of an income tax law exempting from its operation private schools, colleges, commercial colleges, and fraternal benefit societies does not make an illegal discrimination which renders the law invalid as to other corporations or persons upon whom the tax is imposed.

**4. SAME—UNIFORMITY OF METHOD—EQUAL PROTECTION OF LAWS.**

The provision of the fourteenth constitutional amendment which forbids states to deny to citizens the equal protection of the laws does not require taxes to be levied by a uniform method and at the same rate upon every class of property, but the manner of taxation with respect to each class is left to the legislative discretion.

**5. SAME.**

The exemption of insurance companies from the operation of an income tax law does not render it invalid as to other corporations who are made subject to the law, where the exemption is expressly made on the ground that such companies are required by another law to pay a tax on the premiums received.

**6. SAME—DISCRIMINATION—EXEMPTION OF REASONABLE PERSONAL INCOME.**

A law imposing an income tax on persons and corporations does not discriminate illegally against the latter because it allows each person, or the persons composing one family, a reasonable income exempt from the tax; nor is $1,000 per year an amount so unreasonable as not to be within the legislative discretion.

**7. SAME—EFFECT OF UNCONSTITUTIONAL PROVISIONS.**

The fact that an income tax law does not expressly exempt the salaries of judges from the tax, or that it authorizes unreasonable searches and seizures, or requires the production by a taxpayer of evidence incriminating himself, in violation of the Constitution, does not invalidate the law as a whole, and the protection of the Constitution because of such illegal provisions can only be invoked by one against whom they are sought to be enforced.

**8. SAME—HAWAIIAN INCOME TAX LAW—VALIDITY.**

The income tax law of the territory of Hawaii (Act No. 20, pp. 31–35, Sess. Laws 1901) is not invalid, as to its provisions imposing a tax on the incomes of corporations, as being in violation of the Constitution of the United States or the organic act of the territory.

In Error to the District Court of the United States for the District of Hawaii.

The appellants were the complainants in a bill in equity brought to enjoin the collection of an income tax authorized by the act of the Legislature of Hawaii Territory, known as Act No. 20, pp. 31–35, Sess. Laws 1901. The sections of the law which are involved in the discussion on the appeal are the following:

"Section 1. From and after the first day of July, A. D. 1901, there shall be levied, assessed, collected and paid annually upon the gains, profits and income over and above one thousand dollars, derived by every person residing in the territory of Hawaii from all property owned, and every business, trade, profession, employment or vocation carried on in the territory, and by every person residing without the territory from all property owned, and every business, trade, profession, employment or vocation carried on in the territory, and by every servant or officer of the territory, wherever residing, a tax of two per cent. on the amount so derived during the year preceding.

"Sec. 2. There shall be levied, assessed, collected and paid annually, except as hereinafter provided, a tax of two per cent. on the net profit or income above actual operating and business expenses, from all property owned, and every business, trade, employment or vocation carried on in the territory of Hawaii, of all corporations doing business for profit in the territory, no matter where created and organized: provided, however, that nothing therein contained shall apply to corporations, companies or associations conducted solely for charitable, religious, educational or scientific purposes, including

fraternal beneficiary societies, nor to insurance companies taxed on a percentage of the premium under the authority of another act.

"Sec. 3. In estimating the gains, profits and income of any person or corporation, there shall be included all income derived from interest upon notes, bonds and other securities, except such bonds of the territory of Hawaii, or of municipalities hereafter created by the territory, the principal and interest of which are by the law of their issuance exempt from all taxation; profits realized within the year from sales of real estate, including leaseholds purchased within two years, dividends upon the stock of any corporation; the amount of all premiums on bonds, notes or coupons; the amount of sales of all movable property, less the amount expended on the purchase or production of the same, and in the case of a person not including any part thereof consumed directly by him or his family; money and the value of all personal property acquired by gift or inheritance, and all other gains, profits and income derived from any source whatsoever.

"Sec. 4. The net profits or income of all corporations shall include the amounts paid or payable to, or distributed or distributable among shareholders from any fund or account, or carried to the account of any fund or used for construction, enlargements of plant, or any other expenditure or investment paid from the net annual profits made or acquired by said corporation. In computing incomes, the necessary expenses actually incurred in carrying on any business, trade, profession or occupation, or in managing any property, shall be deducted, and also all interest paid by such person or corporation on existing indebtedness. And all government taxes and license fees paid within the year shall be deducted from the gains, profits or income of the person who, or the corporation which, has actually paid the same, whether such person or corporation be owner, tenant or mortgagor; also all losses actually sustained during the year incurred in trade or arising from losses by fire not covered by insurance, or losses otherwise actually incurred. Provided, that no deduction shall be made for any amount paid out for new buildings, permanent improvements or betterments made to increase the value of any property or estate. Provided, further, that no deduction shall be made for personal or family expenses, the exemption of one thousand dollars, mentioned in section 1, being in lieu of same. Provided, further, that where allowable herein, only one deduction of one thousand dollars shall be made from the aggregate annual income of all the members of one family composed of one or both parents and one or more minor children, or husband and wife; that guardians shall be allowed to make a deduction in favor of each and every ward, except where two or more wards are comprised in one family, in which case the aggregate deduction in their favor shall not exceed one thousand dollars. Provided, further, that in assessing the income of any person or corporation there shall not be included the amount received from any corporation, as dividends upon the stock of such corporation, if the tax of two per cent. has been assessed upon its net profits by said corporation as required by this act, nor any bequest or inheritance otherwise taxed as such."

"Sec. 6. It shall be the duty of all persons of lawful age, having an income of six hundred dollars or more for the preceding year, from all sources and of all corporations made liable to income tax, to make and render a list or return, between the first and thirty-first days of July of each year, in such form as the treasurer of the territory may direct, to 'the assessor of the division in which such persons or corporations reside, locate or do business, of the amount of their or its income, gains and profits as aforesaid; and all guardians, trustees, executors, administrators, agents, receivers, and all corporations, or persons, acting in a fiduciary capacity, shall make or render a list or return, as aforesaid, to the assessor of the division in which such person or corporation, acting in a fiduciary capacity, resides or does business, of the amount of income, gains, and profits of any minor or person for whom they act; and the assessor shall require every list or return to be verified by the oath or affirmation of the person or authorized officer of the corporation making the same. If any person or corporation refuse or neglect to render such return within the time required as aforesaid, or renders a return, which in the opinion of the assessor is false and fraudulent, or contains any

understatement, it shall be lawful for the assessor to summon such person, or any of the officers of such corporation, or any person having possession, custody or care of books of account containing entries relating to the business of such person, or corporation, or any other person he may deem proper, wherever residing or found, to appear before him and produce such books at a time and place named in the summons, and to give testimony or answer interrogations under oath, respecting any income liable to tax or the returns thereof. False, willful testimony, given before such assessor shall be deemed perjury and punishment as such."

"Sec. 8. When any person or corporation having a taxable income, refuses or neglects to render any return or list required by law, or decline to take oath or affirmation thereto, the assessor may make such assessments as he may consider just, and the same shall be binding and conclusive upon all parties and shall not be subject to appeal. In case of any false or fraudulent return or valuation by any taxpayer, the assessor shall add 200 per cent. to the just valuation of the income of such taxpayer and the amount of the tax assessed on such increase shall become part of the tax on the said income."

Section 9 provides for an appeal to the "tax appeal court."

The bill further avers as ground for resorting to a court of equity that the defendant in the bill, the appellee, is threatening to collect said tax, and that if the appellants should pay the same under protest, and the law afterward should be determined unconstitutional, they could not procure the return of the money so paid, for the reason that in the meantime, under the system of finances adopted in Hawaii, the moneys received would have been paid out to persons having demands on the treasury of that territory, since the former and present expenditures of the territory are largely in excess of its income, and that there is now a large and constantly increasing deficit in its treasury.

A demurrer was interposed to the bill for want of equity and for multiplicity, and on the ground that the appellant had a full, complete, and adequate remedy at law. The demurrer was sustained and the bill was dismissed. From the decree of the court ordering such dismissal, this appeal is taken.

Thomas Fitch and Joseph J. Dunne, for appellants.
Robertson & Wilder, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellants, by their bill, seek to enjoin the enforcement of the income tax law of Hawaii, on the ground that it violates both the organic act of the territory and the Constitution of the United States, in that it contains illegal discriminations, fails to exempt the salaries of judges, and compels taxpayers to furnish evidence against themselves which may result in their criminal prosecution. The only restriction of the powers of the territorial Legislature contained in the organic act is the provision that the "legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable." There is no express limitation of power in the matter of taxation. The section so quoted is identical with that which has usually been inserted in the organic acts creating territorial governments. It provides, in effect, that the territorial Legislature may not invade the domain of Congress as to subjects of legislation; but, aside from that, it concedes to it all the powers of a legislature of the states. Clinton v.

Englebrecht, 13 Wall. 434, 20 L. Ed. 659; Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654; Cope v. Cope, 137 U. S. 682, 11 Sup. Ct. 222, 34 L. Ed. 832. In Clinton v. Englebrecht it was said:

"The theory upon which the various governments for portions of the territory of the United States have been organized has ever been that of leaving to the inhabitants all the powers of self-government consistent with the supremacy and supervision of national authority, and with certain fundamental principles established by Congress."

The provision that the legislative power shall extend to "all rightful subjects of legislation" includes, therefore, full and comprehensive power to legislate in the matter of taxation. Section 8, art. 1, of the Constitution, requiring "that all duties, imposts, and excises shall be uniform throughout the United States," can have no application to the powers of taxation of a state or territorial legislature. It is a rule only for taxation by the United States. The decisions of the Supreme Court construing and applying that provision of the Constitution and the most of the discussion thereof found in the opinions filed in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, and on rehearing, 158 U. S. 607, 15 Sup. Ct. 912, 39 L. Ed. 1108, so freely quoted from and earnestly relied upon by the appellants, can have no bearing, therefore, upon the present discussion.

It is urged that section 2 of the law makes illegal discriminations in favor of private schools, colleges, commercial colleges, fraternal benefit societies, and fire, life, and marine insurance companies. The corporations so exempted from the income tax are all of the character of corporations usually recognized as proper subjects of exemption from taxation, with the single exception of insurance companies; and, as to those, the act states the reason of their exemption. It is because a tax is imposed on a percentage of their premiums under the authority of another act. In Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616, it was said that the federal Constitution imposes on the states no restraint against unequal taxation. But that remark must be construed in the light of subsequent utterances of the court, in which due effect was given to that portion of the fourteenth amendment which forbids a state to deny to citizens within its jurisdiction the equal protection of the laws. The rule is that unequal taxes may not be imposed upon property of the same kind, in the same situation, and used for the same purpose. But the protection afforded by the fourteenth amendment has never been carried to the extent of requiring that the same tax shall be imposed in the same manner upon every class of property, irrespective of its nature or condition or class. In Kentucky Railroad Tax Cases, 115 U. S. 337, 6 Sup. Ct. 57, 29 L. Ed. 414, the court, after referring to the fact that there was nothing in the Constitution of Kentucky requiring taxes to be levied in a uniform method upon all descriptions of property, remarked:

"The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods. The rule of equality in respect to the subject only requires the same means and methods to be applied impartially to all the constituents of each class so that the law shall operate equally and uniformly upon all persons in similar circumstances."

In Bells Gap Railroad Company v. Pennsylvania, 134 U. S. 232, 237, 10 Sup. Ct. 533, 33 L. Ed. 892, Mr. Justice Bradley said that the fourteenth amendment was not intended to require a state to adopt an iron rule of taxation. So in State Railroad Tax Cases, 92 U. S. 575, 612, 23 L. Ed. 663, Mr. Justice Miller said:

"Perfect equality and perfect uniformity of taxation, as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized."

In Home Ins. Co. v. New York, 134 U. S. 594, 606, 10 Sup. Ct. 593, 33 L. Ed. 1025, Mr. Justice Field said:

"But the amendment does not prevent the classification of property for taxation—subjecting one kind of property to one rate of taxation, and another kind of property to a different rate. * * * Nor does the amendment prohibit special legislation."

In Pacific Express Co. v. Seibert, 142 U. S. 339, 351, 12 Sup. Ct. 250, 35 L. Ed. 1035, the court not only approved the doctrine of the cases above cited, but said that a system which imposes the same taxation upon every species of property, irrespective of its nature or condition or class, "will be destructive of the principle of uniformity and equality of taxation, and of a just adaptation of property to its burdens." In Western Union Telegraph Co. v. Indiana, 165 U. S. 304, 17 Sup. Ct. 345, 41 L. Ed. 725, it was held that, in enforcing the collection of taxes, one rule may be adopted in respect to the admitted use of one kind of property, and another rule in respect to the admitted use of another, in order that all may be compelled to bear their proper share of the burdens of government. In W. W. Cargill Co. v. Minnesota, 180 U. S. 452, 21 Sup. Ct. 423, 45 L. Ed. 618, it was held that a state law requiring a license in respect of elevators and warehouses situated on the right of way of a railroad at points other than its terminal, without requiring such license in respect of elevators and warehouses differently situated, was not a classification so unreasonable as to amount to a denial of the equal protection of the laws.

It is contended that the exemption of incomes to the extent of $1,000 is an illegal discrimination. The power of state legislatures to grant reasonable exemptions from taxation is undisputed. It has been upheld on grounds of enlightened public policy—a public policy which seeks to exclude from taxation the living expenses of the average family, and thus to enable the poor man to escape becoming a public burden. It rests upon the theory that the exemption results in ultimate benefit to the taxpayer, which compensates him for the additional burden of taxation which he is thereby called upon to bear. It does not apply to corporations, for the reason that they have no corresponding expense. But the exemption must be reasonable and impartial, and must be extended to all who are similarly situated. It is urged that the exemption in question is unreasonable. If the power to make exemptions be once conceded, the amount of the exemption is largely within the discretion of the Legislature—a discretion which is not subject to review in the courts unless it be clearly shown to have been abused. In the discussion of the national income tax law in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, Mr. Justice Field thought that the exemption of

incomes to the extent of $4,000 was a discrimination that vitiated the whole legislation; but Mr. Justice Harlan and Mr. Justice Brown, on the rehearing of that case (158 U. S. 675, 694, 15 Sup. Ct. 912, 39 L. Ed. 1108), were of the opinion that the exemption was not unreasonable. The national income tax law of August 5, 1861 (12 Stat. 309), exempted incomes of $800, and those of July 1, 1862, and June 30, 1864 (12 Stat. 473, and 13 Stat. 281), each exempted $600. In no case to which our attention has been directed was question ever made of the validity of those exemptions. When we regard the general policy of such exemptions and their purpose, and consider the annual expenses of maintaining the average family, we are unable to discover any ground for holding that an exemption of incomes to the extent of $1,000 from an income tax law is unreasonable, or that its allowance is an abuse of legislative discretion.

It is contended that the act violates section 1, art. 3, of the Constitution, in that it does not expressly exempt the salaries of judicial officers, and that it violates the fourth and fifth amendments, in that by section 6 it authorizes unreasonable search and seizure of private papers, and compels the taxpayer, in a criminal case, to furnish evidence against himself. As to both of these objections, it may be said that, if the act is unconstitutional in the respects referred to, it does not follow that the whole law is thereby invalidated. The provisions of the Constitution so referred to stand as limitations of the power of the territorial Legislature to tax the salaries of judges, to authorize unreasonable searches, and to enforce the production of evidence, and those limitations must be read into the terms of any law that deals with those subjects. If by virtue of the Constitution the salaries of judges are exempt, that exemption operates upon the income tax law with the same effect as if it had been expressed therein. If the act authorizes unreasonable search, or requires the production of evidence, in violation of the fourth and fifth amendments, the taxpayer may invoke the protection of those amendments whenever he shall be called upon to submit to the search or to produce the evidence. The law in other respects is not rendered invalid either by the failure of the Legislature to exempt a salary which by the Constitution is exempt, nor by incorporating therein unconstitutional provisional remedies for the better enforcement of the law. The tax law is still enforceable without the aid of such remedies. In Allen v. Louisiana City, 103 U. S. 80, 26 L. Ed. 318, it was said:

"It is an elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that, if the parts are wholly independent of each other, that which is constitutional may stand, while that which is unconstitutional will be rejected. * * * The point to be determined in all such cases is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the Legislature."

In Huntington v. Worthen, 120 U. S. 97, 7 Sup. Ct. 471, 30 L. Ed. 588, a part only of a taxation law of Arkansas was held unconstitutional. The court said:

"The statute declared that, in making its statement of the value of its property, the railroad should omit certain items. That clause being held

invalid, the rest remained unaffected, and could not be fully carried out. An exemption which was invalid was alone taken from it. It is only when different clauses of an act are so dependent upon each other that it is evident that the Legislature would not have enacted one of them without the other —as when the two things provided are necessary parts of one system—that the whole act will fall with the invalidity of one clause."

Upon a careful consideration of the act and of the averments of the bill, we discover no ground for enjoining the collection of the tax, and find, therefore, no equity in the bill. The act was undoubtedly intended to remedy the depletion of the revenues of the territory which is described in the bill. It contains no evidence of an intention to unjustly or unfairly discriminate. It places the burden of taxation upon the points of strongest resistance, where it is easiest borne. The same objections to the law that are here urged were presented to the Supreme Court of Hawaii Territory in Robertson v. Pratt, 13 Hawaii, 590, and the law was sustained by the majority of the court. There being no equity in the bill, it becomes unnecessary to consider the other grounds of demurrer.

The decree of the District Court dismissing the bill is affirmed.