BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION.

Dukes County. October 28, 1935. — June 29, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Tax*, On legacies and successions. *Constitutional Law*, Taxation. *Trust*,
Inter vivos.

An interest in remainder, passing in 1930 on the death of the wife of the
donor of a trust, survivor of herself and him, life beneficiaries, to their
children in possession and enjoyment, was then subject to a succes-
sion tax under G. L. c. 65, § 1, it appearing that, although the trust
was created and finally amended at times before 1907 when such
interest was not subject to a tax, the trust could be revoked or amended
only by agreement of both the donor and his wife and that the power
of revocation or amendment did not cease, and the remainder vest in
the children, until the death of the donor in 1920: such taxation
involved no violation of any constitutional right of the children.

PETITION, filed in the Probate Court for the county of
Dukes County on May 2, 1932.

The petition was reserved and reported by *Davis*, J., on
the pleadings and an agreed statement of facts.

*C. M. Rogerson*, for the petitioner.

*J. J. Ronan*, Assistant Attorney General, for the respond-
ent.

RUGG, C.J. This is a petition by the trustee under an
indenture of trust for determination of the succession tax,
if any, due to the Commonwealth on account of the trans-
fer from the petitioner to remaindermen of property held
under the trust. G. L. (Ter. Ed.) c. 65, § 30. The case
was reserved and reported upon the pleadings and an agreed
statement of facts for consideration by this court. G. L.
(Ter. Ed.) c. 215, § 13. The essential facts are these: In
1891, Charles E. Whitney and his wife, Alice Whitney,
entered into an agreement in adjustment of disputes be-
tween them and particularly in settlement of a petition
then pending by the wife for separate maintenance. By

that agreement the property of the husband to a large amount, voluntarily and not as a purchase, was placed in trust, provision was made for the disposition of principal and income, and right was reserved to the husband and wife acting together, but not to either acting alone, to alter or revoke the trust. Extensive powers were given to the trustee, but with direction to pay over, after the deaths of both husband and wife, all the estate to their two children. In 1905, the trust indenture was amended; it then contained a clause of this tenor: "This trust may be revoked at any time after two years from the date hereof on three months' notice to the trustee in writing, signed by both said CHARLES and said ALICE; and may be altered at any time hereafter, on sixty days' notice to the trustee in writing, signed by both said CHARLES and ALICE, but shall not be altered or revoked after the death of either of them." The trust was not revoked and there was no alteration of it subsequently to 1905. Under the trust as amended, the trustee was to pay half of the income to the husband and half to the wife during their respective lives, and each agreed to bear specified family obligations out of such half. If the wife failed to perform her obligations, the husband was to receive the entire income, to support the family, and to have the right to dispose of the property by will subject to the legal rights of the wife. If the wife fulfilled her agreements and survived her husband, she was to receive a half and each of the children a quarter of the income. Upon the death of the survivor of the husband or wife, the income was to be paid to the children equally and the principal distributed to them upon their reaching stated ages, so that, when they should become forty years of age, all the principal would be paid over. Suitable provisions were made as to the possibilities of earlier deaths of the children. The events that have come to pass are that the wife did not break her agreements, survived her husband, who died on September 2, 1920, a resident of this Commonwealth, and herself died on December 13, 1930, leaving the two children, both then over forty years of age.

Upon the death of the husband in 1920, an inheritance tax was exacted on the present interest then passing to his two children for the lifetime of his widow. The respondent now demands an inheritance tax on the principal of the trust fund passing to the children upon the death of their mother. The validity of that tax is challenged.

It is conceded that in 1905 when the trust indenture was amended no statute was in force under which a tax could be levied upon the succession to the trust property by the children. The first statute of that nature was enacted in 1907 and was subsequently amended at various times. The form in force at the time of the death of the husband, the founder of the trust, in 1920, was in these words: "All property within the jurisdiction of the commonwealth . . . which shall pass . . . by deed, grant or gift, except in cases of a bona fide purchase . . . made or intended to take effect in possession or enjoyment after the death of the grantor or donor . . . to any person . . . shall be subject to a tax . . . ." St. 1920, c. 396, § 1; c. 548, § 1. The same provisions, so far as here pertinent, were in force at the death of the wife of the founder in 1930. G. L. (Ter. Ed.) c. 65, § 1.

The petitioner contends that the attempt to apply the taxing statute in the case at bar is in violation of provisions of the Constitution of the United States forbidding a State (1) to pass any law impairing the obligation of contracts, (2) to deprive any person of property without due process of law, and (3) to deny to any person the equal protection of the laws.

A decision adverse to these contentions has been rendered on facts almost identical in *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, affirmed *sub nomine Saltonstall* v. *Saltonstall*, 276 U. S. 260. The governing principles there declared are controlling in the case at bar. In that case a trust was established by deed, under which the income was payable to the donor for life, or at his option to be accumulated, and upon the deaths of himself and his wife to the children of the donor, with gifts over. The donor retained the right to change or terminate the trust

with the concurrence of one trustee. The power of alteration and revocation of the trust reserved by the donor was the equivalent of the reservation of a power of appointment. At the time of the establishment of that trust there was no statute imposing an inheritance or transfer tax on property passing to children, but before the death of the donor a statute similar to the one here assailed was enacted. The tax thus authorized is an excise tax upon succession, which includes the privilege of entering into possession and enjoyment of the property by the beneficiary. The transfer to the ultimate beneficiaries was held taxable as one "made or intended to take effect in possession or enjoyment after the death of the grantor." It was said in *Saltonstall* v. *Saltonstall*, 276 U. S. 260, at pages 270–271: "we are here concerned, not with a tax on the privilege of transmission, not with an attempt to tax a donor's estate for an absolute gift made when no tax was thought of . . . but with a tax on the privilege of succession, which also may constitutionally be subjected to a tax by the state whether occasioned by death . . . or effected by deed . . . The present tax is not laid on the donor, but on the beneficiary; the gift taxed is not one long since completed, but one which never passed to the beneficiaries beyond recall until the death of the donor . . . A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. *Bullen* v. *Wisconsin*, 240 U. S. 625. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another. And so the property passing to the beneficiaries here was acquired only because of default in the exercise of the power during the donor's life and thus was on his death subject to the state's power to tax as an inheritance." This authoritative statement of the law demonstrates that the succession tax levied under a statute operative prior to the death of the founder of the trust, although enacted after the execution of the trust instrument, involved no violation of any constitutional rights of the beneficiaries, because the reserved power of revocation or alteration of the trust prevented the trust estate from vesting finally in the children

as the ultimate beneficiaries until the death of the founder of the trust had extinguished the possibility of a change in the beneficiaries. *Chase National Bank* v. *United States*, 278 U. S. 327, 335–336. The instant case is distinguishable from *Coolidge* v. *Long*, 282 U. S. 582, where no power of alteration or revocation was reserved to the donors of the trust and where the original gift was absolute and irrevocable. For the same reason *Helvering* v. *St. Louis Union Trust Co.* 296 U. S. 39, and *Helvering* v. *Helmholz*, 296 U. S. 93, are not relevant to the facts here disclosed. The case at bar is distinguishable, also, from *Welch* v. *Treasurer & Receiver General*, 217 Mass. 348.

The petitioner relies upon the circumstance that the power to revoke or alter the trust was vested in the founder of the trust to be exercised jointly with his wife, as distinguishing the case at bar from *Saltonstall* v. *Saltonstall*, where that power was vested in the donor and one of the trustees acting jointly. We think that this fact constitutes no sound distinction and does not require a different result.

The petitioner urges that the case at bar in this particular is controlled by *Reinecke* v. *Northern Trust Co.* 278 U. S. 339, where the power of revocation was reserved "to alter, change or modify the trust" to be exercised as to some of the trusts by the settlor and the single beneficiary of each trust acting jointly, and as to another trust by the settlor and a majority of the beneficiaries acting jointly. It was held respecting these trusts, at page 346: "He [the settlor] could not effect any change in the beneficial interest in the trusts without the consent, in the case of four of the trusts, of the person entitled to that interest, and in the case of one trust without the consent of a majority of those so entitled. Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute." That principle is inapplicable to the facts of the case at bar. Manifestly the "beneficial interest" there described is the interest of the remainderman.

It relates to the ultimate beneficial interest in the body of the trust. The interest of the wife of the founder of the trust in the case at bar was not of that nature; it was simply a life estate. It had no connection with the remainderman. It bears some resemblance to the interest of the founder of the trust. It is not adverse to revocation or alteration in the disposition of the remainder for the benefit of the children here sought to be taxed. See *Reinecke* v. *Smith*, 289 U. S. 172, 174–175. It stands on the same footing as that of the trustee whose exercise of the power of revocation was conjoined with that of the donor in *Saltonstall* v. *Saltonstall*, 276 U. S. 260.

Although the present trust was established in 1891 and amended in 1905, the beneficiaries of the remainder received no possession and enjoyment until 1930. The right to succession by them did not become irrevocable until 1920, when the founder of the trust died. It then vested in them finally, subject to be divested if they did not survive their mother. That was long after the enactment of the statute under which the tax was laid. The succession to the possession and enjoyment of that remainder did not pass to them until the termination of the life estates in 1930. There was no division in rights of the children to succeed to the remainder of the trust fund. The entire remainder is subject to the succession tax.

The reserved power of the founder of the trust to revoke or alter the trust, acting jointly with his wife, constituted an interest in the trust property. That power was extinguished by his death in 1920. The resultant right of succession in the beneficiaries of the remainder, to pass into their possession and enjoyment upon the termination of the life estates, was subject to a succession tax without violation of any of the constitutional guaranties invoked by the petitioner.

The conclusion is that the property here in question is subject to a succession tax. *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, and cases there reviewed. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 267 Mass. 240, and cases collected.

*Saltonstall* v. *Saltonstall,* 276 U. S. 260. *Chanler* v. *Kelsey,* 205 U. S. 466, 478. See *Helvering* v. *City Bank Farmers Trust Co.* 296 U. S. 85. Decree is to be entered ordering the tax to be paid, the details to be settled in the Probate Court.

*Ordered accordingly.*